All right, counsel, we're ready. Thank you, Judge Stewart, and may it please the court. As this case returns to this court, it ultimately turns on a purely legal question, whether the district court erred in requiring direct evidence of actual knowledge in determining whether the extraordinary circumstances requirement in Section 28 U.S.C. 636 C-4 was met. For two overarching reasons, the answer to that question is yes, there was error. First, as the Supreme Court emphatically made clear last term in the BLOM v. Honickman case, Congress's adoption of an extraordinary circumstances test bakes into the analysis an inquiry into the movement's own diligence or neglect. This requires use of a constructive knowledge standard in this context, in which a court looks not only to what a movement actually knew, but what a movement reasonably should have known, exercising reasonable diligence. Second, the district court independently erred in the sense that even if the court believed an actual knowledge standard applied, the Supreme Court made clear in the Intel Corporation v. Sulma case that actual knowledge can, and in fact usually is, established through inference from circumstantial evidence. The district court therefore independently erred in repeatedly insisting upon direct or first-hand evidence of actual knowledge and overlooking powerful circumstantial evidence of knowledge, like the fact that Judge Kaye and Mr. Monk openly referred to each other children's by first name in court at status conferences at which the port's counsel was present. The fact that Mr. Norman, the port's own trial counsel, actually walked into the wedding of Judge Kaye's daughter, Sally Kaye, with the Monks. Another red flag that Mr. Monk and Mr. Kaye had a relationship that extended outside of  And the fact that Mr. Deese, the port's own general counsel, was active Facebook friends and users with Judge Kaye, and actually liked a post containing multiple photos of Mr. Monk at the very wedding that was the basis of the port's motion to vacate. So what are you saying? They knew enough indirectly that that should have put them on sufficient notice about all this other non-disclosure? I mean, cutting to the essentials, is that what you're saying? So what we're saying, Your Honor, is that's powerful circumstantial evidence that they actually knew that the relationship extended beyond the fact Well, when Judge Kaye made her first disclosure, she just said the wedding. I mean, that's it. The rest of all of this, I mean No, that's right, Your Honor. But again, I think, you know, first, the question is, is it constructive knowledge or actual knowledge? If it's constructive knowledge, then they have to exercise, show that they exercise reasonable diligence. And when they're on notice, the judge and the counsel are specifically referring to each other, their children's by first name during status conferences. What were they supposed to do? Challenge Judge Kaye and say, well, you said X, so tell me more. That was a red flag. If you were in a courtroom and the judge asked, how's Robbie, how's Sally, by first name with the opposing counsel, that would be a red flag that there was a relationship outside a court. Now, we don't think there was a deep, close, or intimate relationship to begin with, and I'm happy to talk about that, but that was a red flag. The court's own counsel, Mr. Norman, trial counsel, walked into Judge Kaye's daughter's wedding with Mr. Monk. Again, their position before this court the last time in the affidavit was they had no idea that Judge Kaye and Mr. Monk had any relationship outside of the fact that Mr. Monk's daughter was clerking for Judge Kaye at the time. And we know now that that's false. At the bare minimum, there was powerful circumstantial evidence that they either knew or should have  So because they knew a little bit, that absolves fuller disclosure of all the details. If you know a little bit, then that absolves any responsibility by somebody else from telling the whole story. Is that what we're going to... So they had an obligation to exercise due diligence, Your Honor, and they have to show that there wasn't neglect. But counsel... No, go ahead. My understanding is Judge Kaye disclosed that the daughter of counsel clerked for her. She made that disclosure voluntarily, right? And she didn't disclose anything else. So if a lawyer hears that disclosure, it's reasonable to assume that I'm telling you the extent of my relationship with counsel. Here it is. I'm disclosing it. And you're saying when a judge makes that disclosure, then your obligation is to investigate the judge? Well, what I'm saying, Your Honor, is the judge made that disclosure, you're correct. But if six months later at a status conference, you're in court with the judge and the judge says, how's Robbie? You say, how's Sally? Then you're on notice, wait a second. There's a relationship that exists outside of the fact that Mr. Monk's daughter was clerking for Judge Kaye. And you're on inquiry notice, you have constructed notice. And then when your trial counsel joins the team, and your trial counsel has actually attended a wedding with opposing counsel of the judge's daughter, again, you're on notice. And that's what's critical. And again, the BLM bank case is critical on this. The extraordinary circumstances requirement, which is in the text of 636C4, bakes into the analysis. They have to show that they were without fault, that they exercised due diligence, that there wasn't neglect. And I want to just go to- I mean, this is Lake Charles. This is not New York City. Well, I think everybody knew everything. I mean, what I'm saying is Lake Charles is southwest Louisiana. I mean, it's relatively, I forget the hierarchy, what is it? New Orleans, Baton Rouge, Shreveport, Lafayette, Monroe, Lake Charles. I think that's kind of the Baton Horde in terms of population. But I mean, it's Lake Charles. You've got one magistrate judge. Well, Your Honor, as their own counsel testified, everybody knew everybody. But I want to, I mean, just take a step back and look at the broader question of whether they've shown that there's a deep, close, intimate relationship here. And in the court's prior opinion, at page 418, it sort of talked about the kinds of relationships that would present that problem. And the cases it cited involved situations where you had a cousin who had a brother or sister-like relationship with a judge, where you had someone who was a godmother, and where you had someone with a near-paternal-like relationship with a judge. That's what this court pointed to. And we now know, after evidentiary development in this case, that the relationship that existed between Mr. Monk and Judge Kaye didn't come close to that. If you look at over the course of more than a decade, all that they can show is that they had seven meals together, all of them with other people. They can't point you to a single... I mean, counsel, we recuse on less. That's correct, Your Honor. I'm just saying, we recuse on less. Well, I think that... So here, okay, the prior panel had it. They grappled with this matter, their significance of opinion, sent it back. It's laced with, you know, needs factual inquiry, et cetera, et cetera, about all of this. Lays it out and sends it back for the factual inquiry. So that's all what transpired, right? Well, that's correct, Your Honor, but that inquiry was fundamentally tainted by the application of a legally erroneous standard of review that ratcheted up the burden to one that no one could meet. And again, if you go back to the Sulma case in the Supreme Court, the statute there required actual notice. All right, so you have two lines of attack. One, that there's legal... Everything below is permeated with legal error, right? That's correct. In two respects, Your Honor. One, that they didn't apply... The judge insisted on actual knowledge. When it's constructive knowledge, you have to factor into the analysis whether the move was an exercise of diligence. And the other is that he demanded direct evidence. Evidence that Mr. Deese actually saw the photo of Mr. Monk in the wedding, when we know that he actually liked the post in which there were four photos of him in the wedding, and we know that he was an active user where Judge Kaye actually posted on her cover page the very photo of Mr. Monk in the wedding, and he disregarded that because we couldn't prove, and the only way to prove it was by Mr. Deese's own admission, that he actually saw that photo, when this was powerful circumstantial evidence that is always and routinely considered to prove knowledge. And so I think that that's a separate legal error. And then on top of that, I think this is a legal error, too. At the end of the day, you have to take a step back and say, does this record, which shows two individuals whose professional, social, and familial lives intersected over decades in a small community, actually establish the kind of close, deep, personal, intimate relationship that this court referred to? And I think you have to think about your own relationships with people in your own lives. Are the people that the judge talks to at church every Sunday, are they among their friends that have to be disclosed? What about the people they see at the bar association meetings? What about the neighborhood gathering? No, but if you've got a law clerk and you're in somebody's wedding, and it's all of that, that's a far cry from seeing somebody at church or at the concert. I'm sorry. That's just not the same. Well, I think one of the hallmarks of a close, deep, personal relationship are a relationship that exists independent of anyone else. And here, the reason why Mr. Monk knew Ms. Judge Kaye was because he was friends with her husband. I think you want to show meaningful interaction over time between those two individuals. Here you have all they can point to over the course of a decade is seven meals with other people, not a single independent meeting together to have a meal. Now think about your best friends, your close, intimate, deep friends. Could you say that? I don't think anyone reasonably could. Has Judge Kaye ever disclaimed a close relationship with these people? Under sworn testimony, Your Honor. Oh, that's right, she did. Okay, that was interesting. Judge Kaye, Mr. Monk, Rick Norman's wife, the trial counsel's wife, and one of Judge Kaye's law clerks, Elaine Solari, all testified there was no close relationship between the two. They knew each other. Their kids went to the same school together. He was friends with Judge Kaye's husband decades ago. But again, after all of this evidentiary development, what do you have? You have a record with sort of routine intersections, gatherings, a trivial pursuit night here decades ago, a dinner here with other people. You don't have anything remotely approaching what is truly a deep, intimate, close relationship. And again, if you go back to the court's own decision at page 418 where the court is distinguishing between that line, the cases it points to where you have that kind of relationship, a near paternal relationship, a brother-sister type relationship, a godmother, this case isn't anywhere close to that. And if this court holds that this is enough, you're going to put an unbelievable burden on magistrate judges and potentially judges through recusal motions. If in doubt, recuse. In the end, the Lake Charles Division ended up, the whole Western District ended up recusing the case to Texas, just like Judge Tronquil got it. If it was so inconsequential as you say, somebody else in the division, Western District, could have sent it to Shreveport where I live and deal with it. But the whole group ends up recused and they send it to Texas. I hear what you're saying, but I read all those cases, but I mean we just don't come in here and, you know, we got photos, we got weddings, we got the whole schmeal. All she said was my law court ex. Okay, I'm saying she testified to the contrary. We're looking at wedding pictures here. We're looking at the rest of this. We recuse on less than that. It's not the same as a brother or a sister or whatever. I think their wedding was several decades ago, Your Honor, and again, they had noticed their port's own counsel. I don't ask you the question. I ask others. I heard what you said and I hear you. So just tell me. This has been up here once. This is a second go around. Now you tell me, you told me your primary train is legal error, right? Right? So articulate for me what the whole in front of the panel should be if you prevail. So I think it should be that the district court applied a legally erroneous standard. The correct standard considers constructive knowledge, what movement knew or should have known because it has to factor in due diligence. It considers if actual notice is required, it considers circumstantial evidence must be considered, and that the district court also err to the extent that it required knowledge of the full extent or true nature of a relationship, which is a, you know, unmeetable, unmanageable burden. And then the court should say that applying that standard, the record in this case only supports one conclusion, which is that the court knew or should have known that the relationship existed beyond Mr. Monk's knowledge. So you don't want another reconsideration. You want us to, in a plenary fashion, declare the issue. That's what you want. Well, I think the record only supports one conclusion on the proper legal standard,  I'm shocked that that's your... Let me say this, if I could, Your Honor. Your Honor referred to the fact that Judge Doughty recused the other members of the district, but that was because on remand... Well, I know it's unrelated. I just couldn't pass it up. I mean, it just came back to the point. It's a small division. It's not germane to the disposition of this case. But I think... Go ahead. No, finish it. No, no, no, finish it. I was going to say, I mean, I think it was a very sensitive matter to have one of your magistrate judges in a small division attack like this. I mean, she was put through great scrutiny, deposed, put on the stand, and that's why it was recused. I do think that if you send this case back again, it should be sent back to the Western District of Louisiana, at the very least with instructions to reconsider whether recusal is appropriate. Because at this point, Judge Trincali has presided over this hearing. This is a very unusual hearing in which there were sensitive testimony on both sides, and I think it would be unfair to the parties, and frankly, I think improper in terms of how this case would proceed to have that judge then go on to consider the merits of this case. So I think at the very least the court should remain with the instructions for Judge Doty, the Western District of Louisiana, to consider whether the recusal order, which was addressed to a specific issue, is appropriate. But I do think that this court should find legal errors for the reasons that I've discussed. And on the record, under the proper standard, we think the record does support only one proper conclusion. All right. Well, that's an interesting ask, sending it back to Judge Doty, take it back from Texas and keep it in Louisiana where all the judges there know all of this stuff, and somehow there's going to come out some reasoned decision. Anyway, I heard you. I heard you. I'm just here. But that's an interesting point. I didn't see that one coming. I mean, one thing I would say briefly, Your Honor, is that Judge Trincoli is the only judge who's actually sat through the hearing in this case. And so he's the one that really heard the dirty laundry. And that's why I think it would be unfair if the case is going to proceed to a second trial, which would be extremely burdensome, obviously, that it should go to someone who hasn't been tainted or colored that dash. We said Mississippi. They haven't had no part of it. Mississippi's fine, Your Honor. All right. Thank you, Your Honor. Mississippi hasn't had part of it. All right. I'm not trying to make light of you, Mr. Carr. You're a seasoned advocate. I know your pedigree and all that stuff. But I'm just from Shreveport. So I'm just looking at the pictures and knowing what I know. So I hear you. So I have a reasonable feeling Mr. Rubin is not going to agree with what you said, but you'll have rebuttal time to come back on it. You're right, Your Honor. Thank you so much. All right. Thank you. All right. Mr. Rubin. Thank you, Your Honor. I'm going to begin by answering the question, Judge Stewart, that you asked, which is what should this panel do. The ruling should be in accordance with the model code of judicial conduct, Rule 211 and Comment 5, and with 488 of the formal opinion of the ADA. The ruling should be, and it's a narrow case, when there is a close, longstanding personal relationship between a magistrate and opposing counsel, that must be revealed before there can be valid consent, because that's what's constitutionally required for valid consent, and that's the narrow ruling. You need not go beyond longstanding close personal relationships. So if that's the ruling, if you had knowledge, there's no error, and there was no need to further disclose? If there was actual knowledge of a longstanding close personal relationship, yes, you would not have. That was the carve-out in the last remainder, but there was none here. Can you help me understand? We're using a lot of pronouns in this morning's argument, and I want to make sure I understand what you mean, they, we, I, knew, because if we're talking about actual knowledge, then the subject of the sentence really matters. So who needed to have actual knowledge? Nobody on our side had actual knowledge. Who needed to have actual knowledge on your side? The Port of Lake Charles and its counsel. And how would the Port get actual knowledge? It's not a person. It's a, it's a juridical entity, but it's not a person. So how, how would you prove actual knowledge to the Port? Their argument is, is that Mike Dees, who was general counsel, had constructive knowledge. I'm sorry, that wasn't my question. I'm asking you for your position. How would the Port, your client, get actual knowledge? Only through its board members. So would you have to show, would you have to bring the board members, or a majority maybe, to testify and say, we actually knew this? Yes, and in fact they were deposed. So what if Mr. Garr, or his client, had sent certified mail, return receipt requested, proof of delivery, whatever the gold standard is of mail, disclosing every single fact that came out in the Troncalli hearing, and sent it to every one of the board members, and he could prove that the board members received the disclosure. Would that qualify for actual knowledge? It would show, it would certainly change the case, but that's not the issue here. I'm sorry, counsel. I want to hear, I want to understand your argument, but I have a question, and I need an answer to it. Would that show actual knowledge? It would be sufficient, I think, to show enough constructive knowledge to achieve actual knowledge. Great. So we're, at least now we're moving somewhere, because we've moved off the idea that actual knowledge is necessary. No. I haven't said that. I said actual knowledge is necessary. It would be sufficient to show actual knowledge. But let me go back. So I'm sorry. I just, I want to make sure we go through this slowly, because there's a lot of slippage in what you're saying. So just walk through it methodically. I'm quite confident the presiding judge will give you as much time as you need. Yes, Your Honor. Help me understand. I apologize for not answering the question correctly. That's okay. Just slowly. So it can be true that circumstantial evidence can show actual knowledge, yes or no? Yes. So we're not simply saying actual knowledge. Some amount of circumstantial evidence is sufficient. Judge Trincali held the opposite. So why have you not just given away a reversal? Because, first off, and let me talk about three things he found. Number one is he made a credibility call based upon the witnesses, and he talked about who he believed and who he didn't, and that's not reversible error unless there's manifest error, and there's no manifest error here. I point you to footnotes 63, 64, 67, and 68 of our brief. Number two, when you talk about constitutional rights, as opposed to something like the BLM-OM case, which does not involve consent at all, or involve extraordinary circumstance, which, in fact, is not even in the language of that case, of Rule 60. It's not a constitutional question. The second issue is that when you sent this case back, for a factual finding, you had a specific factual finding, and it wasn't based upon the direct evidence rule that he talked about. In fact, the word direct evidence is never in the original opinion, the vacator opinion. The word direct evidence comes up only in one context, and that's in the denial of the Rule 60 motion, and it says what Mr. Deese looked at, and I'm ready to go through that. It was not the basis of the vacator motion. The basis was reading this court's opinion, saying this court held actual knowledge. He didn't use the words, but everything in this court's opinion on remand said actual knowledge is the key, and as to actual knowledge, you can't find a valid constitutional waiver. I'm sorry. I have the remand opinion in front of me. I didn't see actual knowledge. I said it does not have the word actual. Oh, sorry. I thought you said it did say that. No, it does not have the word actual knowledge in it, but Judge Troncali had several pages on it, and our brief talks about the fact that every part of that language of that opinion talks about actual knowledge. It talks about knowledge. It doesn't say it says knowing and knowingly. In fact, in one paragraph, it has that word four times, knowing and knowingly. And Judge Higginson's opinion repeatedly talks, this is why I wanted to make sure I understand about who's the subject of the sentence. It talks about the port knowing, the port knowing, the port knowing, and I don't really understand how one would ever show with direct evidence what the port knew. I don't think there was a requirement for direct evidence of what the port knew. I think that's a misstatement of the record and misapprehension. What he held as actual knowledge, not direct evidence, direct versus circumstantial. Well, then let's just rephrase the question. What does it mean for the port to have actual knowledge? Is it like it's in the meeting minutes of like a board meeting or something? No. I think I'll say it again. I will not say it clearly. A member of the board, if a member of the board of the port knew of a 40-year, longstanding personal relationship between Mr. Monk and Judge Kaye and Judge Kaye's husband and Mr. Monk's wife over 40 years, that would be actual knowledge for the port. If the general counsel knew? If the general counsel or the board members knew, yes. So your position is that Mr. Deese did not have actual knowledge of a 40-year relationship, notwithstanding the wedding he attended? Mr. Deese did not attend the wedding. I'm sorry. He liked the post. There's so many interlapping. Mr. Deese liked the first page of a 2014 post that did not have the picture of Mr. Monk on it. And we have an uncontested affidavit, the Hoffman affidavit, that says, look, liking the first page is to show that you, in fact, looked at the other 17 pictures to see the 25-year-old younger Mr. Monk or that he recognized it or that he recalled it. In fact, there's a case out there called Hill v. Texaco. We cited it in our brief. It's a Deccan case. It says you can't pile inference upon inference to find knowledge or liability, and that's what they're trying to do. They said, well, he must have looked at the 17 pictures. I won't do that in the brief. I don't need to reiterate that. No, he didn't have actual knowledge. The other thing he talked about was that Mr. Norman, who was retained three weeks before trial, had walked into the wedding with Mr. Monk. But, of course, that doesn't prove either that Norman knew that Monk had a 40-year relationship or that Monk knew what Norman's relationship was. In fact, I'm glad that Mr. Garr talked about Polly, which is Rick Norman's wife. She testified she did not know they had a 40-year relationship. Elaine Solari, who was a judge's clerk for 11 years, said she didn't know. And why is that? Because it was not well known. And to say this is a small community is the wrong test. Who knew, actually, of that 40-year relationship? Only two people, Kay and Monk. And that's what the trial court found as a credibility cause, not manifestly erroneous. So, counsel, if we can agree that circumstantial evidence is relevant, where would I look in Judge Troncalli's opinion to find where he discusses the circumstantial evidence and says, look, I've considered this, I've thought about it, and this is how I'm sort of weighing it to show whether and to what extent there was actual knowledge. He talks about text and e-mails. There were hundreds of texts and e-mails. He talks about that. He talks about texts even that occurred between Judge Kay and Monk's wife. He talks about a birthday party, a surprise birthday party. All of those things are circumstantial evidence. The bottom line here is he considered it, and he considered it and he weighed it, and he held it in favor of the court and against IFG, and IFG simply doesn't like that result. So your position is that he thought about all the circumstantial evidence, he knew it was legally relevant, he applied the correct legal standard, that is circumstantial evidence can, in fact, show the requisite knowledge, and he just found it wanting. That's right. And, in fact, we've quoted from the transcript in our brief that he said, I've let a lot of stuff in. I went much broader than I normally would on evidence and let everything in the record. So, yes, he did consider it. Your Honors, the constructive knowledge test as opposed to actual knowledge and disclosure is wrong as a matter of law, it's wrong as a matter of public policy, and it's wrong as a matter of even getting collateral order jurisdiction. We haven't talked about jurisdiction, and I'll stand on my brief on that point, but I simply want to say that if you conclude as I think you must, that this court on the remand said, in essence, without using the words, that actual knowledge is the test, then there was no new provision of law that Judge Troncale did. You lose one of the three stands of the collateral order jurisdiction, and I'll go back to the brief on that. I don't need to drive that into the ground. Your Honor, to convert alleged constructive knowledge into actual knowledge is wrong as a matter of public policy for judges, and part of that is because when you're dealing with, as opposed to recusal, as Judge Stewart was talking about, the only way a trial court can give valid jurisdiction to a magistrate is under 636B, and that requires consent. It is, as this court said last time, a constitutional imperative. It can't be waived. It can't be brushed over, and even as this court said, the mere fact that recusal would not be appropriate doesn't excuse the failure to disclose under 636. Indeed, under 636C, the only way that you can get a trial is to have that kind of valid consent. Your Honor, when the trial court held a lengthy hearing, it was a four-day hearing below, and it wrote an extensive opinion that is entirely fact-based. It is granular on exactly what that relationship was. So let me talk about the four things that were remanded and what that finding was briefly. This court remanded to find the extent and nature of Judge Kaye's friendship. Judge Troncale unequivocally found 40 years, longstanding, deep, and personal, based not merely on a credibility call but on circumstantial evidence. And again, I refer you back to footnotes 63, 64, 67, and 68 of our brief. It's not manifestly erroneous, and they haven't claimed it's manifestly erroneous. You didn't hear us talk about that. They just didn't like the result. You remanded to say what information about these relationships Judge Kaye disclosed, and Judge Troncale answered that unequivocally. I got a law clerk. She's the daughter of a opposing counsel. She's going to be screened off. And as this court noted, and as Judge Graves, you noted in your question, that left the misapprehension that there was nothing else to disclose, no other relationship to disclose. And then it said, when did the court first know, and what did it do? Not when did the court first suspect, not when did the court first have an inclination that it needs to go investigate. And what's it going to investigate? In this case, they happened to go to Facebook. They had to go to TikTok. They had to go to Snapchat. They had to go to Instagram. They had to do it. And you couldn't say, as Judge Graves said, you couldn't say, Judge, I want to ask you a couple more questions about that. What haven't you told me? That's incorrect. Had Judge Kaye simply said, gentlemen, in addition to the law clerk daughter, I want you to know that Mr. Monk and I and our families have been friends for years, and he was a groomsman at my wedding years ago, and I performed the wedding of one of his daughters right before this case was filed. Do you have any problem with that? That would have been sufficient to help the parties know whether to give consent. The absence of that made the consent non-voluntary, non-knowledgeable, non-knowing, and all of that is detrimental. Counsel, can you help me with a – this is a paragraph in the district court's ruling. Certainly. And I want to make sure I understand how you're reading it. So this is at 29.113 and 29.114 of the district court's ruling, and it says, the court considered the parties' briefs and ultimately concluded that actual knowledge of the Judge Kaye-Monk relationship is required. Then it goes on, explains, distinguishes IFG's cases, blah, blah, blah. Seems like IFG didn't get the memo. Seeks to revive a constructive knowledge requirement that the court has already put to rest. The court will apply actual knowledge, not the forgiving inference-laden standard. So in our earlier colloquy, you and I, I thought we sort of agreed, but I don't mean to put words in your mouth, that you can use circumstantial evidence and inference to show actual knowledge. So what is your understanding of the distinction between the actual knowledge standard and the constructive knowledge standard that the district court is talking about? First off, I think you're quoting now from the denial of the Rule 60B motion. I believe that's right. Not for the main order. Does that matter? Well, I think it does because he was simply reiterating that they were, he was saying, sometimes my mind gets in front of my tongue. He was simply reiterating the fact that they had made this argument before and he was rejecting it. He's been rejecting it all along, he says. Yeah, yeah, yeah. He was rejecting it all. So what's the distinction between actual knowledge and constructive knowledge in your view? Actual knowledge, in this case, it's clear, the judge had and constructive knowledge is something that they allege the other side had. There are cases that say that constructive knowledge in some cases can approach actual knowledge. In fact, the best case is the Liljeburg case, which is the case in which Judge Collins knew that he was on the Loyola board and he knew that there was a $6 million deal going on, but he allegedly forgot. He forgot. And it goes up to the Supreme Court, comes back down, and this circuit says, well, he had constructive knowledge of that relationship. He should have recused himself, but it was really an actual knowledge case. In other words, it showed the closeness. What it said was, in essence, actual knowledge there can be, quote, forgotten, but forgetting is not sufficient. I think to answer your question, Your Honor, directly, constructive knowledge can only be transformed into actual knowledge if you show that not only do they knew or should have known, but that the circumstances were such that they were wrong in failing to pursue that. Those are not constitutional tests. The constitutional test, I think, is required for actual knowledge. That's why I think actual knowledge is the key here. You don't even get to constructive knowledge under 636C. So what is the role, in your view, of inferences? Inferences is, in my view, inferences help you determine, for example, for evidence. Do you infer that that proves something circumstantially or not? So you are allowed to take inferences from facts in the record. But circumstantial evidence is not constructive. There are two things. There's constructive knowledge and actual knowledge. Then there's circumstantial evidence and direct evidence. Those two are two different realms. So yes or no, you're allowed to make inferences from evidence in the record to show the requisite knowledge. I'm trying to get away from some of the labels. You are able to make inferences from the record to show constructive knowledge. I don't think you can make inferences from the record to show actual knowledge. And you think it's actual knowledge with no inferences, that is. So I'm hearing you equating in your words, or your labels, direct evidence and actual knowledge. Those are both required. No, I'm not saying direct evidence. Well, then now we're all confused. Because, I mean, I can't. OK, well, then I'm confusing. Then I'm confused with your question, Your Honor. I apologize for this. It's OK. I'm just trying to kneel. What I read in this 60B ruling is that Judge Troncalli is saying, I'm not looking at inferences. I'm not looking at circumstantial evidence. I need actual knowledge, which he equates with direct evidence. That's your friend's argument on the other side. You're saying, no, no, no. At least I thought you were saying, no, no, no. That's not true. You can, in fact, have sometimes you can make inferences. Our example about the certified male. Sometimes you can use circumstantial evidence. Sometimes, yes or no, you can use constructive knowledge. No, never. You can never do constructive knowledge, right? Not for 636C consent. OK, so what is the rule of inference in your view? For 636C, none. I think the rule of 636C is you must have disclosure by the judge of anything that a reasonable person will attest to. It's objective. Would a reasonable person want to know this information to make that constitutional consent? And if that's the answer, which is what's in Rule 211 of the Code of Conduct and 488 of the ABA rule, then the failure to do that means you must vacate. OK, I think I've got it now. And that's the narrow scope of the case. I appreciate you walking it through. I hope I've answered the question, Your Honor. Let me say this. The touchstone of consent is the constitutional basis for a magistrate to make a ruling. It cannot be voluntary and knowing and intelligent if the magistrate fails to disclose information that any reasonable person and reasonable litigant and reasonable attorney would want to know before waiving the constitutional rights of an Article III judge. Indeed, as the Seventh Circuit said in the Listecki case, which we quoted, it would be unreasonable, unrealistic, and detrimental to our judicial system to expect litigants to investigate every potentially disqualifying piece of information about every judge before whom they appear. And as this Court said in the remand order, disqualification is different. Merely because you wouldn't disqualify doesn't mean that you shouldn't disclose to get consent. The onus is on the magistrate judge to make the disclosure, not merely for recusal purposes, but for constitutional purposes. The ruling below is correct, should be affirmed, and the case sent back. Thank you, Your Honor. All right. Thank you, Mr. Rubin. Mr. Scari, you've preserved your rebuttal time, sir. Thank you, Your Honors. So I think either my friend has conceded the central legal error at the heart of this decision by acknowledging that constructive notice does apply, or he's underscored that the district court's standard is completely novel, unmeetable, and legally wrong. And I would point to, Judge Oldham, you're right. Pages 2-9, 1-1-3 to 1-4 make emphatically clear that the district court rejected constructive knowledge and rejected reliance on inference. And that was the reconsideration motion, the Facebook evidence. But if you look at 2-8-8-9-7, that's the court's original decision where the court said only actual notice suffices. So what's your response to Mr. Rubin? Because we're back, well, not back to, but the case is about the parties, quote, consenting to have the matter held before the magistrate. Definition, that's where we are. So with respect to Section 636C, you heard his argument. And in the brief relative, because that's constitutional, what is the standard you're urging is applicable? Right. Or what's your argument? What's your response to his? So I think it's straightforward, Your Honor. It's the BLM-OLM Bank v. Honikin, the Supreme Court decision decided last term where the court interpreted extraordinary circumstances language. And Justice Thomas, in his opinion, emphatically made clear that Congress's use of that language requires consideration of a movement's own diligence, fault, or neglect. And that's why the constructive knowledge standard is compelled by 636C-4 and why the district court standard and my friend's standard, at one part of his argument, is completely incompatible with that. So I think that the Supreme Court's own decision was all set. Okay. So walk me through constructive knowledge and 636C. Yeah, so what that means, Your Honor, is it's not just what the court actually knew. It's what it should have known or would have known exercising reasonable diligence. And it considers not just direct evidence or firsthand evidence, which is what the court called it in its first decision at 28886. It's circumstantial evidence as well, inferences that come from evidence, both of which the district court fundamentally refused to consider, as we know from page 29113. I mean, we disagree with the district court, but to its credit, it was emphatically clear about the standard it was applying. All right. So help me with the departure point. So at the point where the parties or any lawyers are making a determination of whether to consent to go before the magistrate, your argument is that constructive knowledge, whatever that may be, would be sufficient. Knew or should have known would be sufficient to inform counsel about the decision of whether to consent or not. That's true, but just to be clear, that that's not really the relevant. That's one data point, but that applies all throughout the case, what they knew or should have known. And this court made that clear in its decision on page 419 in the original decision where it said that if the court knew about their friendship all along, or even if it discovered it shortly before Judge Kaye issued her order, that that delay would be fatal under the Carter factors. So yes, look at the point in time where they consented. They knew at that time. Dees himself knew through Facebook evidence and otherwise. So in a timeline, was it at the point when they knew about the law clerk, or where in the timeline would the constructive knowledge kick in? I mean, for the most part, when she says, you know, I had a law clerk, I mean, that's kind of... Yes, so the relevant inquiry is all throughout and up to the point that they file the motion. Even if they found out on the last day of trial, or even if they found out during the midst of the trial, and that's clear from this court's own decision, and that's quite right. Because, again, 6364 says extraordinary circumstances. And so let's say they didn't know at the time of consent, which I think is frankly refuted by the record. But, you know, a few months later, when Judge Kaye asks about Mr. Monk's child by a first name, that's a red flag. When Mr. Norman joins the team, and Mr. Norman has seen walked into Judge Kaye's daughter's wedding with Mr. Monk, that's a red flag. When Mr. Dee is continuously and actively communicating with Judge Kaye on Facebook, where every year on the anniversary of her wedding she posts a picture of Mr. Monk and her wedding party, that anyone who visits her site would see, you know, that's constructive knowledge. All to put them on notice that a party exercising reasonable diligence would have known, should have known, that they had this relationship that extended beyond. You know, the record overwhelmingly establishes this. This court sent it back for an evidentiary hearing to determine, you know... So your argument is they had an obligation to investigate the nature of the relationship between the judge and counsel. The judge had no obligation, or she fully discharged her obligation, by simply disclosing that his daughter was her clerk. So, right. I mean, I think they're both part of... They had no obligation to do anything. The judge had no obligation to go beyond that disclosure. No. I think they're both part of the equation. I mean, I would say with respect to the judge, to be fair, as the court's own trial counsel testified, everybody knows everybody. I think she rightly assumed that everybody knew, that everyone knew everyone in the courtroom. Mr. Norman, the court's counsel, was actually chair of the board that appointed Judge Kay to her magistrate seat. Everybody knew everybody, and I think that's what she assumed. But to the extent that they're claiming they had no idea, none whatsoever, in this small town that Judge Kay and Mr. Monk knew each other outside of the courtroom, that became readily apparent over the course of the trial in many different respects. And they had an obligation to exercise due diligence, as the BLM own bank from the Supreme Court last term makes clear, that part of the inquiry, whether or not extraordinary circumstances has been shown, is an inquiry into the movement's own faultlessness, due diligence, neglect. And here, at the bare minimum, there was overwhelming neglect. The existence of this relationship was staring the court in the face and repeatedly came up over the course of the proceedings. So you seem to be saying, and I know you take issue about the actual, no, you know, actual knowledge. Got that. You seem to be arguing there was such overwhelming awareness, whatever, whatever, knew or should have known, that that would have been tantamount to whatever amount of knowledge they needed in order for the consent to be okay. No question, because part of a constructive inquiry notice, but the other flip side of this, Your Honor, is the finality concerns and the extraordinary nature of the release that they're requesting here. There was a three-week trial in this case. Extraordinary investment of judicial resources. I know you want to get the extraordinary out of the BLG case. You're a very seasoned advocate. You're a master of bypassing commas, semicolons, and whatever in a sentence, so you can keep talking and override that red light. But I see it, and so on and so forth. Your reputation precedes you. But nonetheless, you were responsive to the question. No harm in getting as much out of it as you can. Could I make one comment on jurisdiction? Sure, sure. I cut you off with my question, so, yeah. I just want to say one thing on jurisdiction. Why are you putting 15 up there? You're not getting a 15 moment? Oh, no. I think I could do this in a sentence. No, go ahead. I cut you off with mine, so no, no. We think the traditional collateral order factors are satisfied, for the reason you said it. But as we also alluded on page 16 of our response to the motion dismissed, we think that the original decision is fairly interpreted as retaining jurisdiction over this issue and simply remanding for factual development on a consent issue, just like this court did in the McDermott International case. In fact, in this court's decision, the Kensington case it cited from the Third Circuit was a retained jurisdiction situation. So that's an easy resolution to a jurisdictional problem that we don't think exists. All right. I appreciate it. And I will stand on what that clock says. I'm going to determine that you're done. Absolutely. But thank you for all the counsel. It's an important case, and none of my comments here has to make light of it. But it's an interesting case. That's an understatement. But we do appreciate the importance of the legal arguments made and on behalf of all counsel. And so this completes the oral argument session for this panel. And so with that, the panel will stand adjourned. All rise.